UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYTAL ENTERPRISES, INC. | CIVIL ACTION |
| VERSUS | NO. 06-33 |
| NEWFIELD EXPLORATION CO. | SECTION "R" (2) |

### ORDER AND REASONS ON MOTION

The remaining portion of defendant's motion for contempt and sanctions, Record Doc. No. 113, has been referred to me. Record Doc. No. 158. In the original motion, defendant, Newfield Exploration Co. ("Newfield"), sought four kinds of sanctions for alleged violation by plaintiff, Lytal Enterprises, Inc. ("Lytal"), of my discovery order. Record Doc. No. 87. Two of the requested sanctions were trial-related, and the District Judge denied the portion of the motion seeking that relief. The remaining two remedies sought in the original motion were a contempt citation and an award of fees and costs.

After the referral order was entered, I required the parties to make additional submissions, Record Doc. No. 166, and the parties complied. Record Doc. Nos. 180, 181 and 183. In their "Joint Inventory of Documents Produced by Lytal Enterprises, Inc. in Response to Magistrate Judge's Order of September 14, 2006 Granting Newfield Exploration Company's Motion to Compel" and its attachments ("Joint Inventory"), Record Doc. No. 183, the parties have stipulated to all relevant facts, with one exception

concerning the production of a certain Memorandum of Agreement. In its post-motion submissions, Record Doc. No. 180, Newfield seeks a total of $8,968 in attorney's fees incurred in connection with both the original motion to compel, which resulted in my discovery order, and the instant motion for contempt and sanctions. Thus, Newfield seeks relief under both Fed. R. Civ. P. 37(a) and (b). Lytal opposes this request, in terms of its scope, the number of hours for which reimbursement is sought and the hourly rates charged.

Having reviewed the original motion papers and the subsequent submissions of the parties in response to my order, the record and the applicable law, **IT IS ORDERED** that the remaining portion of the motion is GRANTED IN PART AND DENIED IN PART, as follows.

I.    APPLICABLE LEGAL STANDARDS

The court's authority to hold parties who disobey its discovery orders in contempt and/or to impose sanctions in the form of reasonable attorney's fees and costs is unquestioned. Fed. R. Civ. P. 37(b)(2) provides in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others . . . (D) . . . an order treating as a contempt of court the failure to obey any orders . . . . In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable

> expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Even in the absence of a court order concerning discovery, a party may recover costs, including reasonable attorney's fees, incurred in connection with a motion to compel discovery. Fed. R. Civ. P. 37(a)(4) provides in pertinent part:

> If the motion [to compel] is granted . . . , the court shall, after affording an opportunity to be heard, require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

In <u>Tollett v. City of Kemah</u>, 285 F.3d 357 (5th Cir. 2002), the Fifth Circuit differentiated between Rule 37(a) and Rule 37(b) and discussed the method by which courts must determine the reasonableness of attorney's fees awards under either section of the Rule.

> Under Rule 37, if a motion to compel is granted, the district court "shall . . . require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees". Likewise, for failure to comply with a discovery order, the district court "shall require the party failing to obey the order or the attorney

3

> advising that party or both to pay the reasonable expenses, including attorney's fees, <u>caused by the failure</u>."

Id. at 367-68 (quoting Fed. R. Civ. P. 37(a)(4)(A), (b)(2)) (emphasis in original).

"For Rule 37 sanctions, the affidavit of movant's counsel can serve as proof of the amount to be awarded. . . . [W]e primarily use 'the "lodestar" method to calculate attorney's fees . . . . A lodestar is calculated by multiplying the number of hours reasonably expended by <u>an appropriate hourly rate in the community for such work</u>.'" Id. at 367 (quoting <u>Heidtman v. County of El Paso</u>, 171 F.3d 1038, 1043 (5th Cir. 1999) (emphasis in original)). "[T]he 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.' Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." Id. at 368 (quoting <u>Scham v. District Courts Trying Crim. Cases</u>, 148 F.3d 554, 558 (5th Cir. 1998) (citing <u>e.g.</u>, <u>Watkins v. Fordice</u>, 7 F.3d 453, 458 (5th Cir. 1993))).

Once the court calculates the lodestar by multiplying the number of hours reasonably expended by an appropriate hourly rate in the relevant community for such work, the court may decrease or enhance the lodestar based on the following twelve factors (the "<u>Johnson</u> factors"):

> "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the

> preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent;[1] (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases."

Heidtman, 171 F.3d at 1043 & n.5 (5th Cir. 1999) (quoting Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)) (additional citations omitted).

When a contempt citation is sought as a discovery sanction, a magistrate judge is constrained in his authority to find the disobedient party in contempt by the provisions of 28 U.S.C. § 636(e), including its delineation in subsections (1) through (6) of the different procedures and standards to be applied depending upon whether the contempt is civil or criminal in nature, whether it occurs in the magistrate judge's presence and whether it occurs in a consent case under Section 636(c) or otherwise.

"A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions." Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 290-91 (5th Cir. 2002). Where–as here–the civil contempt occurred outside the magistrate judge's presence in a situation in which the magistrate judge is exercising

---

[1] The United States Supreme Court subsequently barred any use of the sixth factor. Walker v. United States Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557, 567 (1992)).

5

authority under 28 U.S.C. § 636(b), the magistrate judge must certify the facts constituting the contempt to the district judge, and the district judge must then issue a show cause order, conduct an evidentiary hearing and make the findings necessary before a contempt citation may issue.  28 U.S.C. §636(e)(6).

A fine is the ordinary civil contempt penalty, but "a civil contempt fine must be either compensatory or coercive."  Shafer v. Army & Air Force Exchg. Serv., 376 F.3d 386, 398 (5th Cir. 2004).  It is coercive only if it provides the party in contempt with a "'subsequent opportunity to reduce or avoid the fine through compliance.'"  Id. (quoting International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 829 (1994)).  It is compensatory only if it is based on evidence of an actual loss that has not otherwise been compensated.  Id.

If a contempt order "is not coercive or compensatory, it amounts to a punitive, criminal sanction" and must be characterized as a criminal contempt.  Id.  The imposition of criminal contempt penalties "must be accompanied by the procedural protections available in ordinary criminal contempt proceedings, including a finding of criminal intent, proof beyond a reasonable doubt, and the right to a trial by jury."  Id.; 28 U.S.C. § 636(e)(2) ("The order of contempt shall be issued under the Federal Rules of Criminal Procedure."); Fed. R. Crim. P. 42.

II.   ANALYSIS

The remaining portion of the motion now pending before me is based principally on Fed. R. Civ. P. 37(b) for the failure of Lytal to comply with my discovery order of September 14, 2005.  Record Doc. No. 87.  However, the motion also seeks recovery of attorney's fees incurred in connection with the original motion to compel, which resulted in the order, a request that is governed by the separate provisions of Fed. R. Civ. P. 37(a).

The subject discovery order required responses to defendant Newfield's Requests for Production Nos. 11 and 13, subject to certain limitations, within ten days of entry of the order.  The order was entered by the Clerk of Court on September 15th, the day after I signed it.  Although document production responsive to the order was therefore required to be completed by October 2, 2006, Fed. R. Civ. P. 6(a), the parties agreed that the required production would instead occur on October 5, 2006, exactly one week <u>before</u> the October 12, 2006 final pretrial conference and eighteen days before the commencement of trial on October 23, 2006.  The looming final pretrial conference and trial dates imposed obvious time pressures on compliance with the order.

It is absolutely clear from the Joint Inventory that Lytal violated my order by failing to produce all required materials on October 5, 2006.  Instead, Lytal delayed until October 18, 2006, six days <u>after</u> the final pretrial conference and only five days before trial, to make the required production as to Newfield's Request for Production No. 11,

7

which sought in pertinent part "all documentation related to the activities of the M/V Lytal Ashley, M/V Lytal Regan and M/V Lytal Andre from December 17, 2005 through January 17, 2005." Specifically, the documents identified on page 2 of the Joint Inventory as "produced by Lytal to Newfield on October 18, 2006" were clearly responsive to my order, yet were <u>not</u> timely produced.

Worse, when counsel for Newfield brought to the attention of Lytal's counsel the deficiencies in Lytal's document production of October 5, 2006, Lytal's counsel, Robert S. Reich, responded with a letter to Newfield's counsel dated October 11, 2006, in which he stated: "Request for Production Number 11 asked for documentation relative to the activities of the M/V Lytal Ashley, M/V Lytal Regan <u>and M/V Lytal Andre from December 17, 2005 through January 17, 2006</u>. Lytal <u>has produced</u> the vessel logs <u>and on/off hire notices for that period. Lytal has no other documents relative to that request.</u>" Record Doc. No. 183 (Attachments to Joint Inventory at Lytal 120) (emphasis added). As established by Lytal's subsequent document production on October 18, 2006, the day <u>after</u> Newfield's instant motion for contempt and sanctions was filed, and as reflected in the Joint Inventory, Lytal had <u>not</u> produced on/off hire notices for the entire time period and had produced <u>no</u> such notices for the M/V Lytal Andre. Thus, the last two sentences of the part of Reich's letter quoted above were false.

As to the court-ordered response to Request for Production No. 13, Reich's letter of October 11th, a week after the agreed-upon production date, states in pertinent part, "we attach hereto the Memorandum of Agreement between Lytal and the buyer." In their Joint Inventory, Record Doc. No. 183 at p.3, the parties disagree, with Lytal stating that the Memorandum of Agreement was attached to Reich's October 11th letter and Newfield stating that it was not attached and was not produced to Newfield until October 17, 2006.

I find in favor of Newfield as to this dispute and conclude that the Memorandum of Agreement was not attached to Reich's letter. Because Reich's letter contained the other falsehoods noted above, I find the remainder of his letter untrustworthy. In addition, although less significantly, the letter did not on its face contain the customary "encl." or other indication of enclosures or attachments. For these reasons, I find Lytal's statement that the Memorandum of Agreement was attached to Reich's letter not credible. Even if the portion of Reich's letter concerning the purported attachment were true (which I cannot find on this record), it is clear that the Memorandum of Agreement was not timely produced.

It appears from Paragraphs 4, 5, 9 and 10 of the affidavit of Lytal's other counsel, Lauren J. Lopresto (Record Doc. No. 183, Exhibit A to Joint Inventory), that the cause of both the failure to comply with my order and the falsehoods contained in Reich's October 11, 2006 letter was the provision either of incomplete information or of

misinformation by Lytal personnel to its counsel.  For this reason, I will not impose sanctions against Lytal's counsel, but only against Lytal itself.

(A)     ATTORNEY'S FEES

For the foregoing reasons, imposition of sanctions pursuant to Fed. R. Civ. P. 37(b)(2) is appropriate, and the motion is granted insofar as it seeks an award of reasonable attorney's fees[2] incurred by Newfield in its efforts to enforce the court's discovery order.  However, I will not award the $8,968 total amount of attorney's fees submitted by Newfield's counsel because I do not find that amount reasonable under these circumstances.

As a threshold matter, Newfield's request includes $5,100 for attorney's fees incurred in preparing the original motion to compel, with its attachments and a reply brief.  Record Doc. No. 64.  This request is governed by Rule 37(a)(4)(A), not Rule 37(b)(2), since no discovery order had yet been violated.  Newfield made no request for such an award in its original motion to compel.  Although Newfield's motion was granted, the order accepted two of the objections that Lytal had lodged against the two subject requests for production and incorporated those objections into the resulting discovery order in the form of a time period limitation and a protective order.  These

---

[2]No out-of-pocket expenses or other costs of any kind, other than attorney's fees, are sought or proved in Newfield's submissions, so no costs other than attorney's fees are awarded.

objections, incorporated into the order, were "substantially justified" under Rule 37(a)(4)(A), and for that reason no award of fees and costs would have been imposed at that time, even if Newfield had requested it.  Thus, no award of fees in connection with the original motion will now be made, and the time and fees reflected in Record Doc. No. 180, Exhibits A and B to the affidavit of Newfield's counsel, Stephanie E. Rennell, will <u>not</u> be compensated.

On the other hand, the reasonable costs incurred in the actions taken by Newfield thereafter, including preparation of the instant motion for sanctions and the supplemental submissions that I ordered, which were caused by Lytal's violation of my order, should now be reimbursed under the separate authority of Fed. R. Civ. P. 37(b)(2).  Exhibits C and D to Rennell's affidavit exclusively reflect time spent by Rennell in connection with the instant enforcement motion and my related order requiring the submission of additional materials.  This evidence establishes that Rennell spent a total of 16.2 hours on this work.[3]  I have reviewed the affidavit and detailed time statements submitted by Newfield and find this amount of time reasonable for the work it reflects.  Newfield should recover a reasonable attorney's fee for these hours in light of Lytal's conduct.

---

[3]I note that Newfield has not requested any amount for the work of its local counsel in connection with the instant motion and has submitted no evidence concerning any amount of such fees, even though local counsel clearly performed some necessary work.  No explanation has been provided for this omission, though it may have been done in the exercise of prudent billing judgment.  Therefore, no award for the fees of local counsel is made.

However, I find that the hourly rate of $250 per hour which Newfield seeks to recover for this time is <u>not</u> reasonable. There is nothing in the affidavits or exhibits submitted by Newfield that establishes Rennell's experience level, area of expertise or the ordinary billing rates for counsel in the relevant community, which is the Eastern District of Louisiana.  Publicly available information indicates that Rennell is a senior level associate at a Houston, Texas law firm and that she graduated from law school seven years ago.  <u>See</u> http://www.martindale.com (Private Practice Lawyer Profile for Stephanie E. Rennell).  While $250 per hour may be the rate Newfield agreed to pay its Houston counsel and it may be a common rate for seventh year lawyers in Houston, it is <u>not</u> a rate which this court has awarded for lawyers of similar experience for such work in this court's market.  Instead, a review of this court's records provides the following sampling of recent attorney's fees awards from which guidance may be gleaned:

1. In approving a class action settlement less than three months ago, Judge Vance employed a "reasonable blended rate for the work involved here" of $250 per hour, reflecting "the prevailing hourly rate for partner-level attorneys in this jurisdiction ($350 per hour) averaged with the prevailing rate for associate-level attorneys in this jurisdiction ($150 per hour)." <u>In re Educational Testing Serv. etc. Litig.</u>, 447 F. Supp. 2d 612, 633 (E.D. La. 2006).

2. Less than five months ago, in a Family and Medical Leave Act case, Magistrate Judge Shushan awarded $225 per hour for lead trial counsel, who had 24 years of experience, and $175 per hour for assisting counsel, who had 13 years of experience. <u>Downey v. Strain</u>, No. 04-2593-SS, 2006 WL 1581234, at *5 (E.D. La. June 5, 2006).

3. I awarded an uncontested rate of $225 per hour to partner-level counsel in Camp v. Progressive Corp., No. 01-2680, 2004 WL 2149079, at *20 (E.D. La. Sept. 23, 2004), in a settlement of a nationwide collective action brought under the Fair Labor Standards Act.

4. In a Voting Rights Act case, Judge Lemelle denied an hourly rate of $225 for a civil rights attorney with 30 years of experience and a former federal judge, and instead awarded $200 per hour as reflective of the rate in this market for very experienced counsel. Sorapuru v. Mitchell, No. 02-2524, Record Doc. No. 63 (E.D. La. July 13, 2004).

5. In Johnson v. ChoicePoint Servs., Inc., No. 03-1061, 2004 WL 253460, at *3 (E.D. La. Feb. 10, 2004), Magistrate Judge Shushan awarded $200 per hour in a Fair Credit Reporting Act case to an attorney who had practiced law for 22 years.

6. In a Title VII case, I awarded $150 per hour to a lawyer who had been practicing for eight years, but granted an upward adjustment to $160 because the case was undesirable and presented significant time constraints. Jimenez v. Paw-Paw's Camper City, Inc., No. 00-1756, 2002 WL 257691, at *22 (E.D. La. Feb. 22, 2002), aff'd, 2003 WL 1524644 (5th Cir. 2003).

7. In a class action under the Fair Debt Collection Practices Act, Judge Vance approved $225 per hour for an attorney who had more than 25 years experience, had appeared and argued before the United States Supreme Court and three United States Courts of Appeals, and had contributed to literature on federal civil procedure. Henderson v. Eaton, No. 01-0138, 2002 WL 31415728, at *5 (E.D. La. Oct. 25, 2002).

8. In a civil rights case in 2001, Judge Vance awarded $150 per hour to an attorney who had been admitted to the bar in 1977. Oyefodun v. City of New Orleans, No. 98-3283, 2001 WL 775574, at *9 (E.D. La. July 9, 2001).

9. In a qui tam case, Judge Duval awarded hourly rates of $250, $175 and $150 for attorneys with varying degrees of experience because of the particular difficulty of the case and the lucrative and less risky business the

>lawyers were precluded from accepting. United States ex rel. Garibaldi v. Orleans Parish Sch. Bd., 46 F. Supp. 2d 546, 569 (E.D. La. 1999), vacated on other grounds, 244 F.3d 486 (5th Cir. 2001).

Based on my review of attorney's fees awards in this court and my own familiarity with the local market and involvement in making such awards, and considering that, although Rennell is an associate, her experience level would place her at the senior end of the associate scale in this market, I find that a reasonable rate for Rennell's work in connection with the instant motion is $175 per hour.

Multiplying the reasonable amount of time (16.2 hours) by the reasonable hourly rate of $175 per hour, the lodestar calculation yields an award against Lytal and in favor of Newfield in this matter of $2,835. Having arrived at the lodestar, I must now consider whether the Johnson factors enumerated above require adjustment of the lodestar for any reason.

I find that all of the Johnson factors, with two exceptions, are either fully reflected or subsumed in the lodestar calculation or are inapplicable to this situation. The two exceptions, however, militate in favor of a small percentage increase in the hourly rate. First, the grudging and foot-dragging manner in which Lytal and its counsel responded to the attempts of Newfield's counsel to prompt compliance with my order, coupled with the falsehoods contained in the letter of October 11, 2006, were unduly contentious and obstreperous. This conduct made this discovery dispute more difficult on Newfield's

counsel than it should have been. Second, the looming final pretrial conference and trial dates imposed time pressures and limitations requiring swift action by Newfield's counsel in response to Lytal's delays and denials. In combination, I find that these <u>Johnson</u> factors warrant a 10% increase in the awardable lodestar amount. This 10% upward adjustment of the lodestar amount equals $283.50, which when added to the lodestar amount of $2,835 yields a total award of reasonable attorney's fees of $3,118.50.

I also conclude, under Fed. R. Civ. P. 37(b)(2), that Lytal's failure timely to comply with my order, the obfuscation caused by the misrepresentations in its counsel's October 11th letter and its delay in complying with my order until <u>after</u> the pending motion had been filed and shortly before trial, were <u>not</u> substantially justified, and there are no other circumstances that would make an award of these fees against Lytal unjust.

For all of the reasons discussed above, I find that a reasonable amount of awardable attorney's fees is $3,118.50, and Newfield's motion is granted in that amount.

(B)     <u>CONTEMPT</u>

The motion is denied insofar as it seeks a contempt citation. All responsive materials were ultimately produced, although late and on the eve of trial, and trial has already been completed. Thus, no civil contempt citation would be appropriate because there is no need to coerce further compliance with my order and Newfield has already

15

been adequately compensated for its costs incurred in connection with Lytal's conduct, pursuant to the Rule 37(b)(2) imposition of reasonable attorney's fees set out above.

I also decline to make the certification of facts required by 28 U.S.C. § 636(e) to invoke criminal contempt proceedings. I discern no proof of <u>criminal</u> intent in Lytal's conduct. In my judgment, the attorney's fees sanctions imposed under Rule 37(b)(2) are sufficient to address Lytal's conduct without the expenditure of time and judicial and party resources that would be required in criminal contempt proceedings, which would serve no useful purpose beyond those already accomplished by the remainder of this order.

## III.  CONCLUSION

For all of the foregoing reasons, the motion is granted in that Lytal must pay Newfield $3,118.50 in reasonable attorney's fees incurred to remedy Lytal's violation of my discovery order. In all other respects, the motion is denied.

By copy of this order, I am advising Judge Vance of my ruling so that she may consider including this award as a separate item in favor of Newfield and against Lytal in the final judgment to be entered by the court.

New Orleans, Louisiana, this  17th  day of November, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Sarah S. Vance